59 So.2d 625 (1952)
SMITH et al.
v.
STATE.
Supreme Court of Florida, Special Division A.
June 13, 1952.
Rehearing Denied July 14, 1952.
D.C. Laird, Lakeland, and B.A. Meginniss of Meginniss, Thompson & Morrison, Tallahassee, for appellants.
Richard W. Ervin, Atty. Gen., and William A. O'Bryan, Asst. Atty. Gen., for appellee.
SEBRING, Chief Justice.
C. Maxwell Smith and Alfred Lamb were informed against in an eight count information. The State abandoned counts 1, 2, 6 and 7 and put the defendant to trial on the remaining four counts. Both defendants were found guilty on counts 4, 5 and 8 and the defendant Smith was also found guilty on count 3 which was filed only against him. An appeal has been taken from the judgment and sentence.
When this appeal was argued at the bar of this Court the Attorney General conceded that the evidence adduced at the trial was not sufficient to sustain a conviction under counts 5 and 8 of the information. We agree with his conclusion in the matter and hence will consider only count 3, which charges Smith with uttering a forged instrument, and count 4, which charges Smith and Lamb as principals in the second degree to forgery.
The transactions out of which the prosecution arose involved one bank check numbered 8517, in the sum of $2,000, dated March 4, 1950, payable to the order of J.W. Hall, and drawn on the Lake Wales State Bank against the account of B.C. Cook & Sons. With respect to these transactions count 3 of the information charged that on March 4, 1950 C. Maxwell Smith falsely uttered and published to The Exchange *626 National Bank of Winter Haven as true, the endorsement of the name "J.W. Hall," appearing on the back of said check, then and there well knowing that said endorsement was false, forged, altered and counterfeited. Count 4 of the information charged that on March 4, 1950 one M.L. Taylor falsely made, forged and counterfeited the name of J.W. Hall, as an endorsement on said check and that the defendants, Maxwell Smith and Alfred Lamb, were then and there present abetting, counselling, hiring and otherwise procuring the said Taylor to do and commit the said wrongful act.
The essential evidence offered by the State to support the charges is fairly stated in the brief of the Attorney General substantially as follows: One M.L. Taylor obtained from B.C. Cook & Sons a check in the sum of $2,000, drawn upon the Lake Wales State Bank, upon his representation that he had bought a crop of citrus fruit for their account. The check was made payable to one J.W. Hall for the reason that Taylor did not possess a fruit buyer's license and bond and Taylor was operating under Hall's license. Taylor did not deliver the check to Hall. Instead he took it to the Imperial Inn, an establishment operated by the defendant Smith, and there in the immediate presence of, and with a pen handed him by, Smith, endorsed J.W. Hall's name on the back of the check and received therefor from Smith the sum of $2,000. At the time of this transaction the defendant Lamb was in the building but not in the immediate presence of Taylor and Smith. After Smith had cashed the check for Taylor the latter went into a back room of the Inn and promptly proceeded to lose the money in a poker game in which the defendants Smith and Lamb were participating. Subsequently, Smith presented the check to the Exchange National Bank of Winter Haven and fraudulently represented to the bank officials that he knew J.W. Hall, the payee of said check, and that Hall's endorsement on the back of the check was genuine. In reliance upon these representations the officials approved the check and cashed it. Subsequently, payment of the check was dishonored by the drawee bank because of the forgery of the endorsement of the payee.
We do not find one shred of evidence in this statement of facts to convict the defendant Lamb of any of the charges upon which he was tried or on any other charge contained in the information. However, we find sufficient evidence to sustain the conviction as to Smith on the charge of uttering a forgery.
The trial court did not err in refusing to grant a motion for continuance made on the ground that a material witness for the defense would not be able to attend the trial because of illness. It is well settled that a continuance will not be granted because of the expected absence of a defense witness unless the motion for continuance is sworn to and shows that the matters and things about which the witness will testify are material to the cause of the defense and cannot be proven by some other available witness. Sections 916.04 and 916.05, Florida Statutes 1949, F.S.A.; Lewis v. State, 153 Fla. 836, 16 So.2d 50; Harper v. State, 160 Fla. 402, 35 So.2d 4.
The motion was not sworn to as required by statute. Moreover, all that the movant expected to prove by the absent witness was "that he was present and saw Maxwell Smith pay all the money over to M.L. Taylor and that he was present during the entire transaction and can testify exactly what happened from the time the check was given to Maxwell Smith until the cash was paid to M.L. Taylor." Had the witness been present to give this testimony, it would not have added anything to or taken anything from the defense interposed by the defendant, Smith, or to the case made by the State. Taylor, a State witness, testified that when he tendered the endorsed check to Smith he received full value for it. Smith testified to the same effect. The wife of Smith was supposed to have been present during the transaction. She could have been called to the stand to explain the transaction had there been any dispute in testimony as to what happened.
It is contended by the defendant Smith that the court committed reversible error in permitting the prosecution to introduce *627 testimony of the handling of other checks in transactions other than the one charged in the information. As respects this contention it is shown by the record that the trial court permitted the State, over the objections of the defendant, to introduce in evidence and testify about checks other than the one directly in issue. These checks were five in number and were cashed by Smith a few days before, or a few days after the check of March 4, 1950, which is the subject matter of this prosecution. Four of these instruments were checks made payable to the order of J.W. Hall; one was a check made payable to P.D. Bass. All were given by B.C. Cook & Sons to M.L. Taylor for supposed fruit purchases.
The trial court allowed these checks to be received in evidence over the objection of the defendants that they constituted evidence as to separate and independent crimes wholly unconnected with the transaction for which the defendants were being prosecuted and that hence they were inadmissible. The question is whether the reception in evidence of these checks constituted reversible error.
At the trial the State witness Taylor testified that as to all of the checks delivered to him by B.C. Cook & Sons he forged the names of the payees thereon and that Smith was present and saw him execute the forged endorsements. Taylor testified further that all of the checks were cashed by Smith and that the money received was promptly lost by him in the back room of the Imperial Inn in a poker game in which Smith participated. Another State witness testified that after he had received the checks Smith persuaded the bank to cash them upon his representation that the endorsements thereon were genuine and were the payees' endorsements. When Smith took the stand in his own behalf he flatly denied that he ever saw Taylor sign the names of the payees on the checks or that he knew that the endorsements were forgeries. Upon this state of the record, we cannot say that reversible error was committed by the trial court in allowing the checks with the forged endorsements thereon to be received in evidence. Though the general rule is that in a prosecution for a particular offense evidence tending to show that the defendant is guilty of another and distinct offense disconnected with the crime charged is inadmissible, Wallace v. State, 41 Fla. 547, 26 So. 713; Suarez v. State, 95 Fla. 42, 115 So. 519; Boyett v. State, 95 Fla. 597, 116 So. 476; Gunnels v. State, 96 Fla. 659, 118 So. 919; there are certain well established exceptions to the rule, particularly in respect to cases involving forgery. See Sinclair v. State, Fla., 46 So.2d 453. So, in Pittman v. State, 51 Fla. 94, 119, 41 So. 385, 393, 8 L.R.A.,N.S., 509 it was held that on the trial of an accused for uttering an instrument having on it forged endorsements, knowing at the time that they were forged, and with an intent to defraud and injure "`the utterance by the defendant near the same time, but previously, of other notes with forged endorsements, and his possession and attempting to negotiate subsequently, but near the same time, another note with forged endorsements on it, and a guaranty to one of the makers thereof with forged signatures, are admissible as evidence that defendant knew, when he uttered the instrument described in the information, that the endorsements were forged, and of a criminal intent in uttering the same.'" See also Langford v. State, 33 Fla. 233, 14 So. 815; 22 C.J.S., Criminal Law, § 691(k), page 1135.
We have considered all other grounds of appeal urged by the defendants below and we find them to be without merit.
From the conclusions we have reached it follows that the judgment and sentence as to the defendant Lamb must be reversed and set aside; and that the judgment and sentence as to the defendant Smith, under count 4 of the information, must be affirmed.
It is so ordered.
TERRELL and THOMAS, JJ., and MURPHREE, Associate Justice, concur.